(March 11, 1889.)

## UNITED STATES v. KUNTZE.

### [21 Pac. 407.]

TIME AND PLACE OF HOLDING COURT—POWER OF JUDGES TO FIX.—
The judges of the district court have power when assembled at
the capital to fix the time and places for holding court in their
respective district.

SAME—WHERE UNITED STATES IS A PARTY.—They also have the
power to fix the time and places for holding terms of court for
the trial of causes where the United States is a party, or where
such cause arises under the constitution and laws of the United
States.

VENIRE—JURORS—MARSHAL.—In such cases it is proper to issue the
venire to the marshal of the United States, directing him to
summon jurors from the body of the district at large.

INDICTMENT—BIGAMY—COHABIT.—In an indictment under section
3 of the act of Congress, approved March 22, 1882, chapter 47,
entitled "An act to amend section 5352 of the Revised Statutes
of the United States, in reference to bigamy and for other pur-
poses," the use of the word "cohabit" is sufficient, and it is not
necessary to set out at large in the indictment the meaning or
definition of the word itself.   In the trial of a cause arising
under said section the prosecuting attorney referred to the fact
that the defendant had failed to testify as a witness in his own
behalf when he had the right to do so.   This is held error, but
is cured by the court subsequently, at the request of the defend-
ant, charging the jury in substance that the fact that the de-
fendant did not testify in his own behalf should not in any man-
ner be considered by the jury as a circumstance against him.
(Syllabus by the court.)

APPEAL from District Court, Bingham County.

Smith & Smith, for Appellant.

There is no such crime known to the laws of the United States as "unlawful cohabitation," nor is there such a crime as "cohabitation." The time of holding the district courts, as well as the place, is fixed by the judges of the supreme court; but they must be held in the "several counties or subdivisions" of the district. (U. S. Rev. Stats., sec. 1914.) To convict under the indictment, it was incumbent on the government to prove two principal facts: 1. That the defendant lived (cohabited) with the two women named in the indictment; 2. That a marriage, real or ostensible, with each of these women, had preceded this cohabitation. (U. S. Rev. Stats., sec. 1865.)

James H. Hawley, United States District Attorney.

The word "cohabit," when used in a criminal statute, means "together as man and wife." (Idaho Rev. Stats., sec. 7684; Webster's Dictionary, 284; *Cannon v. United States*, 116 U. S. 74, 6 Sup. Ct. Rep. 278.) While this court has the power to set terms of court in each of the counties of the territory, it would still have the right to determine in which of said counties United States business should be transacted. (U. S. Rev. Stats., sec. 1910; U. S. Rev. Stats., sec. 1874.)

LOGAN, J.—The defendant was indicted by the grand jury at Blackfoot, Idaho territory, in October, 1887, for a violation of section 3 of the act of Congress approved March 22, 1882, chapter 47, entitled "An act to amend section 5352 of the Revised Statutes of the United States, in reference to bigamy and for other purposes." The section reads as follows: "Sec. 3. That if any male person, in a territory or other place over which the United States have exclusive jurisdiction, hereafter cohabits with more than one woman, he shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine of not more than $300, or by imprisonment for not more than six months, or by both said punishments, in the discretion of the court." The defendant was tried and convicted at the June term, 1888, of the district court of Bingham county,

for a violation of the preceding section, and sentenced to suffer
the extreme penalty of the law, and from that judgment he has
appealed to this court.

The indictment referred to reads as follows: "Samuel
Kuntze is accused by the grand jury of the United States with-
in and for the third judicial district of Idaho territory, duly
summoned and impaneled upon their oaths, by this indictment,
of the crime of unlawful cohabitation, committed as follows, to
wit: The said Samuel Kuntze, at Bear Lake county, within
said third judicial district of Idaho territory, on the first day of
December, A. D. 1884, and thereafter, on divers other days, and
continuously from the said first day of December, A. D. 1884,
up to and including the day of finding this indictment, did un-
lawfully cohabit with more than one woman, to wit, with Mrs.
Samuel Kuntze and one Caroline Wuthrick, against the peace
and dignity of the United States, and contrary to the form,
force and effect of the United States statute in such case made
and provided." To this indictment the defendant demurred
upon the ground that the same did not state facts sufficient to
constitute an offense, in this: That it charges a mere conclu-
sion of law; that it did not state whether he cohabited with the
two women named as his wives or otherwise; and that the court,
being a district court for Bingham county, had no jurisdiction
of the offense attempted to be charged, it being alleged to have
been committed in Bear Lake county. The demurrer was over-
ruled by the court below, which decision is assigned as error
by the defendant.

The first objection goes to the meaning of the word "cohabit,"
used in section 3 of the act, and also in the indictment. This
word has several meanings, as defined by Webster and Wor-
cester, and among its definitions we find that it is defined, "To
dwell or live together as husband and wife"; and this unques-
tionably is the sense in which it is used both in the statute and
in the indictment. The context in which it is found, and the
manifest evils which gave rise to the statute in regard to co-
habitation, require that the word should have the meaning as-
signed to it. (*Cannon v. United States,* 116 U. S. 55, 6 Sup. Ct.
Rep. 278.) Taking the meaning of the word as defined, and the
manner in which it is used in the indictment, we think it is

sufficient to charge the defendant with the crime he is alleged to have committed. Certainly, the defendant was fully aware of the nature of the offense with which he was charged; and, taking into consideration sections 7684 and 7686 of the Revised Statutes of Idaho, we think the indictment is sufficient.

The second objection is practically disposed of by this court when it has disposed of the first objection. At any rate, it becomes more a question of evidence than of law, if the meaning of the word "cohabit" is to be in the sense used. The opinion of the supreme court is very full upon this subject, as will appear on page 71 of *Cannon v. United States,* 116 U. S. Although it is true that this case cannot be considered as authority, yet the opinion of the court upon the questions raised is of as much value as if the case was of the most binding authority.

The third objection goes to the jurisdiction of the court, and the construction of the jury by which the defendant was convicted. No question is raised as to the manner of drawing the grand jury, for the reason that the manner of their drawing does not appear to the court. The question is raised, however, as to the power of the court to summon such grand jury from the district at large, and the right of the United States marshal to execute the process. The same questions are raised in regard to the trial jury, and we will consider and dispose of both the questions at the same time.

The only question involved is the power of the court to hold sessions of court for the trial of causes arising under the constitution and laws of the United States in one designated place in the judicial district. The organic act, section 1914, provides that the time of holding the district courts, as well as the places, shall be fixed by the judges of the supreme court when assembled at their respective seats of government. Section 1874 of the organic act provides that the judges of the supreme court in each territory of the United States are hereby authorized to hold court within their respective districts in the counties wherein, by the laws of said territory, courts have been or may be established, for the purpose of hearing or determining all matters and causes except those in which the United States is a party. The act of March 2, 1867, passed with espe-

cial reference to Idaho territory, provides that the judges of the supreme court of said territory, or a majority of them, shall, when assembled at the seat of government of said territory, define the judicial districts of said territory, and assign the judges who may be appointed for said territory to the several districts, and shall also fix the times and places for holding court in the several counties or subdivisions in each of such judicial districts, and alter the times and places of holding the courts as to them shall seem proper and convenient. It would certainly seem fair to conclude from these acts that the judges, as provided by law, may so arrange the time and place for holding court for the trial of causes in which the United States is a party at such place or places in the district as they may think proper and convenient. The place for holding court in the third district was fixed at Blackfoot, Bingham county. We think the court had this power. (*Huston v. Heed,* 1 Idaho, 402.)

The selection of jurors by the marshal from the body of the district under open *venire* directed to him was made the subject of challenge by the defendant, which challenge was overruled by the court. We are referred to the case of *Clinton v. Englebrecht,* 13 Wall. 434, as decisive of this point in favor of the defendant. This case is not at all in point. It was a civil case, arising under the laws of Utah, and did not fall within the jurisdiction of a district court fixed for the trial of such issues. The law of the territory of Utah had provided a mode of selecting and returning jurors, which was openly disregarded by the district court, and for this error the judgment was reversed. The case at bar is founded upon the statute of the United States, and appertains to the federal jurisdiction of the court, and differs materially from that decided by the supreme court in the above case. No provision has been made by the legislature of this territory for selecting or summoning jurors for the trial of cases arising under the laws and constitution of the United States, or in which the United States is a party, and it would seem that in the absence of any territorial law the court had the common-law power to proceed in the manner in which it did, and this position is supported by undoubted authority. (*Beery v. United States,* 2 Colo. 186; *Huston v. Heed,* 1 Idaho, 404; *United States v. Beebe,* 2 Dak. 292, 11 N. W. 505;

*McCann v. United States,* 2 Wyo. 275; *Bennet v. United States,* 2 Wash. Ter. 179, 3 Pac. 272.) The marshal being the executive officer of the court when sitting for the trial of causes in which the United States is a party, and performing essentially the duties of a sheriff at common law, it is no objection that the selection of the jurors was intrusted to him; for, by the common law, he was clothed with authority to that end. (*Beery v. United States, supra.*) We think, therefore, that no error was committed by the court below in its disposition of the demurrer and challenges to the grand and trial juries.

The defendant requested the court to instruct the jury that in this case the evidence did not warrant a verdict of guilty, and that it was their duty to return a verdict of not guilty. The court was right in declining to give this instruction. There was some evidence in the case tending to prove the guilt of the defendant, and sufficient to authorize the court in submitting the case to the jury, and, the jury having found a verdict upon the evidence, we are not inclined to interfere with their verdict.

The refusal of the court to give the first instruction requested by the defendant was not error. The court charged the jury that, when a person is charged with an offense, his flight or hiding will not of itself warrant a conviction, but it may be proven as a circumstance to be considered with the other evidence in the case. This, we think, was sufficient and justified by the evidence, and consequently it became unnecessary thereafter to charge as requested by the defendant upon the same point. (*People v. Forsythe,* 65 Cal. 101, 3 Pac. 402; *People v. McDowell,* 64 Cal. 467, 3 Pac. 124.)

It was manifestly improper on the part of the district attorney to have referred to the fact in any way in his address to the jury that the defendant had failed to testify in his own behalf. He should not have called the attention of the jury to that fact. But as it appears subsequently that the defendant requested the court to instruct the jury that the failure of the defendant to testify as a witness in his own behalf should not be taken into consideration by the jury in arriving at their conclusion in this case, and is not to be considered as a circumstance against him, and it appearing that the court did so instruct the jury, all of which took place subsequent to the re-

marks made by the district attorney, we fail to see in what manner the defendant was injured by such remarks. . The error on the part of the district attorney was cured by the act of the defendant, and of the court in the charge above referred to. We do not deem it necessary to notice particularly any other exception taken by the defendant in this case. It is sufficient to say that we find no error in the record calling for a reversal of the judgment. The judgment is therefore affirmed.

Weir, C. J., and Berry, J., concurring.