[Sac. No. 281.   Department Two.—September 10, 1897.]

GRANITE GOLD MINING COMPANY, Respondent, v. S. H. MAGINNESS et al., Appellants.

EVIDENCE—ADMISSIONS—EXPLANATORY EVIDENCE—PLEADINGS.—The general rule that an entire admission is to be taken together, in order to enable the court or jury to judge of its true extent, does not extend to receiving the whole of what was said by the party making the admission, but only such other or further part of what was said as would in any way explain or qualify the part first given in evidence; and this is the true rule applicable to admissions in pleadings under our codes.

ID.—ADMISSION OF ANSWER—EJECTMENT FOR MINING CLAIM—TITLE OF CORPORATION PLAINTIFF—EXPLANATORY EVIDENCE—AVERMENT OF DEFENDANT'S TITLE—NONSUIT.—In an action of ejectment brought by a mining corporation to recover a mining claim, where the plaintiff offered in evidence, in support of its title, an averment of the answer that, at a time specified, title to the mining ground in controversy was vested in a person named, and that, under a contract and certain mesne conveyances, the legal title thus vested passed to and vested in the plaintiff, only so much of the answer as is explanatory of such admission or may qualify it, is proper evidence for defendants, and not the entire answer, and where defendants read the whole remainder of the answer, which averred a legal and equitable title in the defendants at the beginning of the action, such averment is not binding upon the plaintiff, and the defendants are not entitled to a nonsuit upon the ground that plaintiff offered no evidence in rebuttal of the alleged title of the defendants.

CORPORATIONS—GENERAL POWER TO PURCHASE—PRESUMPTION—BURDEN OF PROOF AS TO EXCEPTION.—Every corporation is presumed to have power to purchase and hold real estate, and if there is anything in its charter, or the business in which it is engaged, or the law under which

it is organized, abridging this power, it must be shown affirmatively by the person assailing its title, else a conveyance to it will be deemed valid.

ID.—PURCHASE OF MINING CLAIM BY MINING CORPORATION—ASSENT OF STOCK-HOLDERS—CONSTRUCTION OF STATUTE—"ADDITIONAL MINING GROUND"—PROOF REQUIRED.—The general presumption of the power of corporations to buy and sell real property must prevail in case of a mining corporation, except in those cases where the facts appearing of record show affirmatively that the case is one within the restrictions of the act of April 23, 1880, for the further protection of stockholders in mining companies; and where a mining corporation purchases a mining claim, formal assent of the stockholders is not required in order to the validity of the conveyance to it, unless it affirmatively appears that the corporation already has mining ground prior to the purchase and that the purchase is of "additional mining ground."

ID.—CONVEYANCE AT ORGANIZATION OF MINING CORPORATION—CONSIDERATION FOR STOCK.—Where it appears that a conveyance of a mining claim was made to a mining corporation at the time of its organization, in consideration of the issuance of its stock to the grantors in the conveyance, it is to be inferred that the corporation then owned no other mining ground, and that the conveyance is valid without formal action of the stockholders.

APPEAL from a judgment of the Superior Court of El Dorado County. M. P. Bennett, Judge.

The facts are stated in the opinion.

Williams & Witmer, for Appellants.

Irwin & Irwin, for Respondent.

SEARLS, C.—Action of ejectment to recover a mining claim situate in Smith's Flat mining district, county of El Dorado, state of California.

Defendant S. H. Maginness answered separately and filed a cross-complaint. Plaintiff had judgment for an undivided one-half ($\frac{1}{2}$) of the demanded premises. Defendant Maginness appeals from the judgment.

Plaintiff is a mining corporation, organized under the laws of the state of California on the nineteenth day of June, 1894, and having its principal place of business at Sacramento in said state.

The objects of the corporation, as specified in its articles, are declared to be, "to buy, own, hold, construct, lease, bond, mortgage, and hypothecate mines and mining claims and mining property of every kind, . . . . and generally to carry on the business of mining in all its branches," etc.

At the trial, plaintiff, after introducing in evidence its articles of incorporation, and for the purpose of making its case, offered in evidence certain portions of the answer of defendant Maginness setting up an equitable defense, in which answer said defendant averred that title to the ground described in the complaint at a time therein specified was vested in one Thomas Potts, Sr.; that under and pursuant to a contract and sundry mesne conveyances the legal title thus vested in said Potts passed to and vested in the plaintiff herein.

Defendant Maginness objected to the admission of any portion of the answer in evidence on the ground of its incompetency, and further objected to portions of the answer being admitted without the balance thereof being read and admitted in evidence.

The court ruled that the portions of the answer offered by plaintiff were admissible, and they were admitted; but the court also held that the remainder of the answer, on the demand of the defendant, must be read and admitted in evidence in connection with the portions offered and admitted on behalf of the plaintiff. Counsel for plaintiff excepted to the ruling of the court admitting those portions of the answer not offered by plaintiff. The whole answer setting up an equitable defense was then read in evidence. It is sufficient to say that, taken as a whole, it showed, if treated as true in all its parts, a legal and equitable title in defendant Maginness to the land in controversy.

Plaintiff also offered in evidence a patent to the land in question from the government of the United States to the persons therein named as grantees, and sundry mesne conveyances from said grantees through which the title vested in plaintiff.

The last of said conveyances was one from G. W. Cummings and Kate L. S. Cummings to plaintiff, dated June 19, 1894, whereby the grantors therein granted the land in dispute to said plaintiff. Counsel for defendant Maginness objected to the introduction of the deed in evidence upon the grounds: 1. That it does not appear that said G. W. and Kate L. S. Cummings had title to the property at the date of the conveyance, and that it does appear from the evidence of plaintiff that the title had passed to defendant Maginness prior to the execution of said deed; 2. "That it does not appear that any or two-thirds of the stockholders of the plaintiff consented to said deed and purchase, or ever ratified the same."

The objection was overruled and the deed admitted in evidence, to which ruling of the court counsel for the defendant excepted.

Plaintiff then rested its case, whereupon counsel for defendant Maginness moved for a nonsuit upon the grounds substantially: 1. That plaintiff had not shown title or right to possession at the time of suit brought to the premises described in the complaint, and that the evidence of plaintiff showed that at the date of suit brought title to the property was vested in defendant Maginness; 2. That plaintiff claims title under a deed of grant, bargain, and sale from Kate L. S. Cummings and George W. Cummings, dated June 19, 1894, etc., and that it does not appear that at the time of the execution of the deed the trustees of the plaintiff were authorized by the stockholders or two-thirds of the stockholders, to make the purchase, or that the stockholders, or two-thirds of them, ratified the deed at any time subsequent to its execution.

The court overruled the motion for a nonsuit, and this action by the court constitutes the error assigned on this appeal.

The substance of the contention of appellant, under the first point made in favor of the nonsuit, is, that the whole answer of the defendant having been admitted in evidence, the facts therein stated must be considered the same as if admitted in open court by both parties, and as such answer averred title in defendant, which was not explained or contradicted by other evidence offered by plaintiff, defendant was entitled to a nonsuit.

We think the general rule is well established that an entire admission is to be taken together. This is essential to enable the court or jury to judge of the true extent of the admission, which when taken entire will often have a different import from that which a partial account might convey. (*Trammell v. Bassett*, 24 Ark. 499; *Barnes v. Allen*, 1 Abb. App. 111; *Searles v. Thompson*, 18 Minn. 316; *People v. Murphy*, 39 Cal. 52; *Barry v. Davis*, 33 Mich. 515.)

In the *Queen's case*, 2 Brod. & B. 297, 298, Abbott, C. J., in delivering the opinion of the court, went to the extreme length of saying: "The conversations of a party to the suits are in themselves evidence against him in the suit, and, if a counsel chooses to ask a witness as to anything which may have been said by an adverse party, the counsel for that party has a right to lay before

the court the whole which was said by his client in the same conversation, and not only so much as may explain or qualify the matter introduced by the previous examination, provided only that it relate to the subject matter of the suit, because it would not be just to take a part of a conversation as evidence against a party without giving to the party at the time the benefit of the entire residue of what he said on this occasion."

Starkie adopted the foregoing rule in his work on Evidence. (Starkie on Evidence, 2d ed., 180.)

In *Prince v. Samo,* 7 Ad. & E. 627, Lord Denman, C. J., criticised the rule as enunciated in *Queen's case, supra,* and adopted by Starkie, and denied its authority to the extent which it went. He stated the rule to be that, where part of a conversation had been given in evidence, any other or further part of the conversation might be given in evidence in reply, which would in any way explain or qualify the part first given in evidence.

We think the rule as stated by Denman, C. J., the true one to apply to admissions in pleadings under our codes.

To illustrate: A brings an action against B, the maker of a promissory note; B admits making the note, and pleads accord and satisfaction, payment, etc. At the trial A reads th admission in the answer to avoid the necessity of proving the ng of the note, and rests. To hold that this admits the wh swer and is proof of every issuable fact stated in the answe. in nowise qualifying the admission as to making the note, to us as absurd.

Such a rule would antagonize the whole theory of our sys of code pleading, under which a fact admitted or alleged in t complaint and not denied by the answer is to be taken as true.

To call the attention of the court to such admission, or failure to deny a material fact alleged, it is necessary to read it. For that purpose it is evidence. All other issuable facts set up in the answer are to be deemed in law as denied, and it is only those other statements in the pleading which go to qualify the admission that are to be taken as a part of the evidence under such circumstances. Section 1854 of our Code of Civil Procedure fixes the rule in this state. It is as follows:

"When part of an act, declaration, conversation, or writing is given in evidence by one party. the whole on the same subject

may be inquired into by the other; when·a letter is read the answer may be given; and when a detached act, declaration, conversation, or writing is given in evidence, any other act, declaration, conversation, or writing which is necessary to make it understood may also be given in evidence."

When the plaintiff offered in evidence so much of the answer of defendant as averred the execution of certain deeds of conveyance, it entitled the defendant to read as evidence in the case every fact averred in his answer going to explain, modify, or qualify the averments made evidence by the plaintiff, and, as the cause was tried by the court, it may have been proper to permit the whole answer to be read, to 'the end of determining whether or not any such explanations or qualifications were contained therein, but this did not have the effect of making the whole answer conclusive evidence in the case.

In *Loftus v. Fischer*, 113 Cal. 288, 289, a portion of a verified complaint in another action was admitted in evidence on behalf of the defendant.

Plaintiff's counsel thereupon offered in evidence all of that complaint, as was said "to explain the portion admitted." The court, in excluding the whole complaint, said: "If there is any portion that the other side [plaintiff] think will show how or why that was [the admission], it is admissible." Plaintiff on appeal contended that the whole complaint should have been admitted. This court dismissed the question as follows:

"The mere statement of the facts shows the unsoundness of the claim."

Plaintiff afterward offered in evidence all the deeds in the chain of title, in view of which the answer and its statements were of little importance to it, but this fact does not alter the importance of the question made by appellant.

We are of opinion the court did not err in refusing the nonsuit upon the ground we have considered.

2. The more formidable question in the case relates to the admission of the deed in evidence from Cummings and Cummings to the corporation plaintiff without proof of the consent or ratification of stockholders, as required by the act of April 23, 1880, entitled, "An act for the further protection of stockholders in

mining companies." (Stats. 1880, p. 131.) The first section of that act is as follows:

"It shall not be lawful for the directors of any mining corporation to sell, lease, mortgage, or otherwise dispose of the whole or any part of the mining ground owned or held by such corporation, nor to purchase or obtain, in any way, additional mining ground, unless such act be ratified by the holders of at least two-thirds of the capital stock of such corporation.

"Such ratification may be made either in writing, signed and acknowledged by such stockholders, or by resolution duly passed at a stockholders' meeting called for that purpose."

In *McShane v. Carter,* 80 Cal. 310, it was held that the act of 1880, quoted above, goes to the power or authority of the directors of a mining corporation, and that without the consent or subsequent ratification by the holders of two-thirds of the stock of the corporation a conveyance of the "mining ground" of such corporation by the directors did not pass the title, and that "the question can be raised by one who connects himself with the title of the corporation which owned the property, as well as by the stockholders thereof."

In *Pekin Min. etc. Co. v. Kennedy,* 81 Cal. 356, it was held that a conveyance of the real property of a mining corporation under its corporate seal, which is not proved to have been ratified by the holders of two-thirds of its capital stock as provided by section 1 of the act of April 23, 1880, concerning mining corporations, does not pass title to the grantee, and will not sustain an action of ejectment by such grantee for the land described in the deed, as against third parties without title. It will be observed the cases cited both related to conveyances by the corporation which were not consented to or ratified by the stockholders as provided by the statute.

It must also be noted that the section we have quoted uses different language as applicable to cases of sales by the corporation, from that expressed in reference to purchases by like corporations.

They may not sell, lease, mortgage, or otherwise dispose of the whole or any part of the mining ground owned or held by such corporation, but when it comes to the clause in reference to pro-

curing mining ground the language is, "nor to purchase or obtain in any way any additional mining ground" unless ratified by stockholders as therein provided.

This language would seem to imply that mining corporations may purchase or hold some mining ground without the necessity of the consent of stockholders as indicated, and that the statute aims only at the purchase or obtaining additional mining ground. To say that a thing is additional presupposes something to which it is an addition.

Additional land is land added to other land. An addition to a house can only be constructed where there is a house to which it is added. A mining corporation must have mining ground before it can acquire additional mining ground.

If this be true, and if it be true that a mining corporation may in the first instance acquire by purchase or location mining ground without the assent of its stockholders, then it must follow that we cannot say that a purchase of mining ground by the company is invalid for want of the assent of stockholders as provided by the statute until the evidence shows that it already holds mining ground—until it appears that the purchase or location is of additional ground as specified in the statute. The corporate powers, business, and property of all private corporations must be exercised under our law by a board of directors. (Civ. Code, sec. 305.)

Among the powers conferred upon corporations is the right "to purchase, hold, and convey such real and personal estate as the purposes of the corporation may require, not exceeding the amount limited in this part." (Civ. Code, sec. 354, subd. 4.)

Every corporation is presumed to have power to purchase and hold real estate, and if there is anything in its charter, or the business in which it is engaged, or the law under which it is organized, abridging this power, it must be shown affirmatively. (*People v. La Rue,* 67 Cal. 526; *Stockton Sav. Bank v. Staples,* 98 Cal. 189; *Miners' Ditch Co. v. Zellerbach,* 37 Cal. 543; 99 Am. Dec. 300.)

We are of opinion that the general presumption of the power of corporations to buy and sell real property must prevail, except in these cases where the facts appearing of record show affirmatively that the case is one within the restriction of the act of

1880. In the case of a sale of real property by a mining corporation the transaction is a valid one without the assent of the stockholders, until it appears that the sale and conveyance is of its mining ground, for the reason that the restriction of the statute applies not to a sale of its real property generally, but only to that of its mining ground. So in case of the purchase of real property by a mining corporation, in order to render the assent of stockholders necessary, it must appear: 1. That the real property purchased is mining ground; and 2. That it is additional mining ground.

These being exceptions to a general rule, that corporations may acquire, sell, and convey property, he who objects to the validity of a conveyance must show the case to come within the exception, or it will be deemed valid.

In the present case there was no showing that the mining corporation owned or held any mining ground prior to the purchase evidenced by the conveyance in question.

Indeed, an inference may fairly be drawn from the record that the plaintiff did not own any mining ground prior to this conveyance.

The articles of incorporation show that the stock of the corporation plaintiff is divided into sixty thousand shares; that Kate L. S. Cummings and George W. Cummings subscribed for thirty thousand shares, or just one-half thereof.

The allegation of the answer is that one-half of the capital stock was in part consideration for the conveyance by said Cummings, which conveyance was executed June 19, 1894, the very day upon which the corporation plaintiff was organized.

The act of April 23, 1880, was amended in a number of important particulars since the trial of this cause. (Stats. 1897, p. 96.)

We recommend that the judgment appealed from be affirmed.

Haynes, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is affirmed.

McFarland, J., Temple, J., Henshaw, J.

Hearing in Bank denied.